# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **CRAIG A. BEAN,**<br>*Plaintiff* | §<br>§<br>§ | |
| **v.** | §<br>§ | **CASE NO. 1:23-CV-01504-DII** |
| **STEP 1 CREDIT, LLC,**<br>*Defendant* | §<br>§<br>§<br>§ | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE DISTRICT COURT**

Before the Court is Plaintiff Crag A. Bean's Motion for Default Judgment Against Step 1 Credit, LLC, filed March 6, 2024 (Dkt. 11). By Text Order entered May 10, 2024, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.    Background

On December 11, 2023, Plaintiff Craig A. Bean sued Defendant Step 1 Credit, LLC ("Step 1"), alleging that it had violated the Credit Repair Organizations Act ("CROA") and the Utah Credit Services Organizations Act ("UCSOA"). Bean is a resident of Utah, and Step 1 is a limited liability company with its principal place of business in Austin, Texas. Complaint, Dkt. 1 ¶¶ 4-5.

Bean alleges that he contracted with Step 1 in February 2021 to remove negative information from his credit report. *Id.* ¶¶ 7-11. He alleges that he made payments over several months, but Step 1 delivered no results, so he canceled the agreement. *Id.* ¶¶ 12-15. Bean alleges that Step 1 kept his payments despite failing to perform any credit repair services, *id.* ¶ 16, violating both the CROA and the UCSOA.

1

Bean served Step 1 on January 18, 2024. Dkt. 8. Step 1 has made no appearance and has failed to plead, respond, or otherwise defend this case. On February 20, 2024, the Clerk entered default against Step 1. Dkt. 10. Bean asks the Court to enter a default judgment against Step 1 and award him $1,700 in actual damages and $2,889.20 in attorneys' fees and costs. Dkt. 11 at 3.

## II.    Legal Standard

Under Rule 55, a default occurs when a defendant fails to plead or otherwise respond to a complaint within the time required. *N.Y. Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). After the defendant's default has been entered by the clerk of court, the plaintiff may apply for a judgment based on the default. *Id.* But even when the defendant technically is in default, a party is not entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). There must be a sufficient basis in the pleadings for the judgment entered. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

After entry of default, the plaintiff's well-pleaded factual allegations are taken as true, except as to damages. *Nishimatsu,* 515 F.2d at 1206 (stating that the defendant, by default, "admits the plaintiff's well-pleaded allegations of fact"). But a default "is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," and the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu,* 515 F.2d at 1206. Entry of a default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Under Rule 55(b)(2), a court may hold a hearing to conduct an accounting, determine the amount of damages, or establish the truth of any allegation, but a hearing is unnecessary if the court finds it can rely on detailed affidavits and other documentary evidence to determine whether to grant a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). The Court finds that a hearing is unnecessary.

### III.    Analysis

In considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012).

### A.  Jurisdiction

When a party seeks entry of a default judgment under Rule 55, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001) (citation omitted). Because Bean asserts claims under 15 U.S.C. §§ 1679b and 1679f, he invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims because they arise out of the same alleged facts such that they form "part of the same case or controversy" as Bean's federal claims. 28 U.S.C. § 1367(a); *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Generally, a court may exercise general personal jurisdiction over a corporation in (1) the state of incorporation and (2) the state where it has its principal place of business. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020). This test applies to limited liability companies as well as corporations. *Id.* at 337 n.10. The Court has personal jurisdiction over Step 1 because Bean alleges that Step 1 is a limited liability company "organized under the laws of the state of Texas with its principal place of business located" in Texas. Dkt. 1 ¶ 5.

### B.  Liability

The Court next considers whether a default judgment is procedurally warranted and the Complaint sufficiently sets forth facts showing that Bean is entitled to relief. *United States v. 1998 Freightliner Vin #:1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

3

### 1. Default Judgment is Procedurally Warranted

In determining whether a default judgment is procedurally warranted, courts consider six factors:

> (1) whether material issues of fact are at issue;
>
> (2) whether there has been substantial prejudice;
>
> (3) whether the grounds for default are clearly established;
>
> (4) whether the default was caused by a good faith mistake or excusable neglect;
>
> (5) the harshness of a default judgment; and
>
> (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. The Court finds that default judgment is procedurally warranted. First, there are no material facts in dispute because Step 1 has not filed an answer or any responsive pleadings. *Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ."). Second, Step 1's "failure to respond threatens to bring the entire process to a halt, effectively prejudicing [Bean's] interests." *RLI Ins. v. 2 G Energy Sys.*, 581 F. Supp. 3d 817, 824 (W.D. Tex. 2020). Third, the grounds for default are clearly established. The Clerk has entered default against Step 1, which was properly served and has "failed to appear and participate at all, much less timely file a responsive pleading." *Can Cap. Asset Servicing, Inc. v. Walker*, No. 1:17-CV-1147-RP, 2019 WL 2298703, at *2 (W.D. Tex. May 30, 2019). Fourth, the Court cannot find a good-faith mistake or excusable neglect because Step 1 has failed to appear. Fifth, although Bean seeks damages, he seeks only his actual damages to which he is entitled under federal and state law, limiting the harshness of a default judgment. Sixth, "the Court is not aware of any facts that would obligate it to set aside the default if challenged" by Step 1. *Id.* For these reasons, the Court finds that default judgment is procedurally warranted.

## 2.  There Is a Sufficient Basis for Judgment in the Pleadings

### a.  Credit Repair Organizations Act Claims

The CROA provides that any "person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person." 15 U.S.C. § 1679g(a). The CROA defines a "credit repair organization" to include any person who uses interstate commerce to sell or offer to sell a service with the purpose of improving a consumer's credit record. 15 U.S.C. § 1679a(3).

Bean alleges that Step 1 violated:

(1) § 1679b(a)(3), which prohibits false representations about the services of a credit repair organization;

(2) § 1679b(a)(4), which prohibits "any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization";

(3) § 1679b(b), which prohibits a credit repair organization from charging a consumer for a service before it fully performs that service; and

(4) § 1679f(b), which prohibits a credit repair organization from attempting to obtain a waiver from a consumer of that consumer's rights under the CROA.

Dkt. 1 ¶¶ 19-28. Bean alleges that:

(1) Step 1 is a credit repair organization offering credit repair services through interstate commerce, *id.* ¶¶ 5, 21;

(2) Step 1 represented that its services would remove negative items from Bean's credit report and that credit reporting agencies would respond to its disputes, *id.* ¶¶ 23-24;

(3) Step 1 charged Bean for credit repair services before it had performed those services, *id.* ¶ 26; and

(4) Step 1's contracts contain "a broad limitation of liability clause that seeks to prevent consumers from recovering damages available under the CROA," *id.* ¶ 28.

By defaulting, Step 1 admits these facts. *Nishimatsu*, 515 F.2d at 1206. They establish that Step 1 charged Bean for credit repair services before it had performed those services, in violation of

15 U.S.C. § 1679b(b). Step 1's statement that it could "permanently remove negative credit information" from Bean's credit report regardless of "how accurate or how old the information was" also misled Bean, in violation of § 1679b(a)(3). *United States v. Cornerstone Wealth Corp.*, 549 F. Supp. 2d 811, 817 (N.D. Tex. 2008). Step 1's conduct similarly deceived Bean in connection with its credit repair services in violation of § 1679b(a)(4). But Bean's assertion that Step 1's contracts contain a limitation of liability clause, without specific allegations of the clause's language or the rights it would limit under the CROA, prevents the Court from determining that Step 1 attempted to obtain a waiver of Bean's rights under the CROA in violation of § 1679f(b).

The Court finds that Bean is entitled to a default judgment on his CROA claims under §§ 1679b(a)(3), 1679b(a)(4), and 1679b(b).

### b. State Law Claims

Bean also asserts claims under the UCSOA, UTAH CODE § 13-21-3. Dkt. 1 ¶¶ 29-35. Under § 13-21-2(3)(a), a "credit services organization" in Utah includes an organization offering to improve a buyer's credit. Bean alleges that Step 1 violated § 13-21-3(c), which prohibits the same conduct as 15 U.S.C. § 1679b(b), and § 13-21-3(g), which prohibits the same conduct as 15 U.S.C. § 1679b(a)(3-4). *Id.* ¶¶ 32-35. Based on the same allegations supporting his claims under the CROA, the Court finds that Bean is entitled to a default judgment on his UCSOA claims.

## C. Relief

Having found that the motion for default judgment should be granted and judgment entered in favor of Bean, the Court must determine the appropriate relief. Bean asks the Court to award $1,700 in actual damages and $2,889.20 in attorneys' fees and costs, with post-judgment interest. Dkt. 11 at 3. Both the CROA and the UCSOA require a court to award actual damages and fees and costs. 15 U.S.C. § 1679g(a); UTAH CODE § 13-21-9(1).

Section 1679g(a)(1) provides that a court shall award as actual damages the greater of "the amount of any actual damage sustained" because of the violation of the CROA or "any amount paid by the person to the credit repair organization." Bean asks to be awarded the amount he paid to Step 1: an initial payment of $100 plus sixteen monthly payments of $100, for a total of $1,700. Dkt. 11-1 at 1-2. The Court finds that Bean is entitled to actual damages of $1,700 under § 1679g(a)(1).

Courts in the Fifth Circuit use the "lodestar method" to calculate an appropriate fee award. *Cruz v. Maverick Cnty.*, 957 F.3d 563, 574 (5th Cir. 2020). The lodestar amount is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, namely, the market rate in the community for the work. *Id.* "[T]here is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). After calculating the lodestar amount, a court may enhance or decrease the amount of fees based on the factors set forth in *Johnson v. Ga. Highway Exp., Inc*. 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[1] The party seeking fees has the burden to show the reasonableness of the hours billed and the exercise of reasonable billing judgment. *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).

In support of Bean's request for attorneys' fees and costs, he submits billing records from his attorney, Nathan C. Volheim. Dkt. 11-2 at 1-2. Volheim asks the Court to award fees for 5.4 hours of his work at $375 per hour and 2.7 hours of paralegal work at $125 per hour. *Id.* The Court finds

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

that the requested rates and hours of work are reasonable. *See Dominguez v. Mun. Credit Serv. Corp.*, No. SA:23-CV-1232-DAE, 2024 WL 1451219, at *3 & n.2 (W.D. Tex. Feb. 13, 2024) (recommending rate of $375 per hour for Volheim and co-counsel and $125 for paralegal time), *R. & R. adopted*, 2024 WL 1451137 (W.D. Tex. Apr. 2, 2024); *Hunsley v. Credit Sage, LLC*, No. MO:22-CV-249-DC-RCG, 2023 WL 2746051, at *5 (W.D. Tex. Mar. 7, 2023) (recommending rate of $375 per hour for Volheim and $125 for paralegals), *R. & R. adopted*, 2023 WL 2769437 (W.D. Tex. Mar. 31, 2023). The Court calculates the lodestar at $2,362.50 and declines to adjust it.

Bean also asks the Court to award $526.70 in costs, comprising the $402 filing fee, a $105 fee for private service of process, and $19.70 in mailing costs. *Id.* at 2. Bean is entitled to recover the filing fee under 28 U.S.C. § 1920(a), but costs for private process servers are not recoverable without a showing of exceptional circumstances. *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 585 (W.D. Tex. 2010). Incidental costs such as postage or shipping also are unrecoverable. *Smith W. Tex. Props., Ltd. v. Allied Prop. & Cas. Ins.*, 555 F. Supp. 3d 342, 348 (W.D. Tex. 2021). The Court finds that Bean has not shown exceptional circumstances to justify awarding the private process server fees or mailing costs, so he is entitled to $402 in costs. Bean also is entitled to post-judgment interest under 28 U.S.C. § 1961(a).

### IV.    Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Plaintiff Craig A. Bean's Motion for Default Judgment Against Step 1 Credit, LLC (Dkt. 11) and **ENTER DEFAULT JUDGMENT** under Rule 55(b) against Defendant Step 1 Credit, LLC on Bean's claims under the Credit Repair Organizations Act, 15 U.S.C. §§ 1679b(a)(3), 1679b(a)(4), and 1679b(b), and the Utah Credit Services Organizations Act, UTAH CODE § 13-21-3.

The Court **FURTHER RECOMMENDS** that the District Court award Bean $1,700 in actual damages, $2,087.50 in attorneys' fees, and $402 in costs, plus post-judgment interest.

It is **ORDERED** that the Clerk remove this case from this Magistrate Judge's docket and return it to the docket of the Honorable District Court.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. See *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 22, 2024.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE